UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRANCE MONK,

          Petitioner,

v.

SUPERINTENDENT RACETTE,

          Respondent.

No. 14-CV-2967 (KMK) (LMS)

ORDER ADOPTING R&R

KENNETH M. KARAS, District Judge:

On April 21, 2014, Terrance Monk ("Petitioner"), proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his August 17, 2005 judgment of conviction for attempted robbery in the first degree in New York state court and his sentence of a 10-year determinate term of imprisonment with five years of postrelease supervision. (Pet. for Writ of Habeas Corpus ("Pet.") 1 (Dkt. No. 1).) On July 18, 2014, the case was referred to Magistrate Judge Lisa Margaret Smith pursuant to 28 U.S.C. § 636(b)(1). (*See* Order Referring Case to Magistrate Judge (Dkt. No. 5).) On March 24, 2017, Judge Smith issued a Report and Recommendation (the "R&R") recommending that the Petition be denied. (*See* Dkt. No. 18.) For the reasons set forth below, the Court adopts the R&R.

## I. Discussion

The factual and procedural background of this case is set forth, in part, in the R&R. (*See* R. & R. 2–4.) The Court will not repeat that background here.

The R&R was issued on March 24, 2017, (*see* Dkt. No. 18), and Petitioner's objections were therefore due by April 7, 2017, (*see id.*). On April 3, 2017, Petitioner requested an additional 30 days in which to submit his objections, (*see* Dkt. No. 19), and the Court granted the

extension, (*see* Dkt. No. 20). On May 4, 2017, Petitioner timely filed his objections to the R&R. (*See* Dkt. No. 22.)

A. Standard of Review

1. Review of a Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), (D), or (F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). However, where a party timely objects to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "When a [petitioner] simply rehashes the same arguments set forth in [his] original petition, however, such objections do not suffice to invoke de novo review of the [r]eport." *Aponte v. Cunningham*, No.

08-CV-6748, 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, Nos. 02-CV-2299, 02-CV-2300, 2004 WL 287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

### 2. Habeas Corpus Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . . must defer to the determination made by the state court . . . ." (citation omitted)).

Under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). A petitioner can rebut this presumption only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C.

4

§ 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

B. Analysis

Petitioner raises a number of specific objections to the R&R. (*See* Obj. to R. & R. ("Obj.") (Dkt. No. 22).) The Court will address each in turn.

1. Appointment of Counsel

Petitioner first argues that he should have been appointed pro bono counsel to assist him with his habeas petition. (*See* Obj. 5–6.) As Petitioner points out, a number of lawyers were involved in the case while on direct appeal, and the case went all the way up to the New York Court of Appeals, after which an opinion was written with one judge dissenting. (*See id.* at 6.)

As an initial matter, Petitioner never made a formal application for counsel. The Petition does request, in its prayer for relief, that the Court "assign counsel for oral argument," (Pet. 6), but Petitioner never made a motion or application for appointment of counsel. In any event, however, Petitioner has not made an adequate showing of a need for appointment of counsel.

A habeas petitioner has no constitutional right to counsel, *see Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991), and where no evidentiary hearing is necessary, "the appointment of counsel to represent a pro se habeas petitioner rests in the court's discretion," *United States ex rel. Cadogan v. LaVallee*, 502 F.2d 824, 826 (2d Cir. 1974). In such circumstances, representation may be provided if the petitioner is a "financially eligible person" and the Court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). When assessing

5

whether justice requires appointment of counsel, the Second Circuit has held that the Court must assess

> whether the indigent's position seems likely to be of substance[,] the indigent's ability to investigate crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Mitchell v. Breslin*, No. 01-CV-5520, 2002 WL 31255076, at *1 (S.D.N.Y. Oct. 8, 2002) (alteration and internal quotation marks omitted) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986)).

Here, Petitioner has made no showing of indigence. Upon being directed to either pay the filing fee or apply for in forma pauperis status, Petitioner opted to pay the (modest) filing fee. (*See* Dkt. No. 2; *see also* Dkt. (entry for June 2, 2014).) In none of his papers has Petitioner indicated an inability to afford counsel in this application. In the absence of such a showing, the Court is not authorized to appoint counsel.

Even if Petitioner adduced evidence of indigence, however, the interests of justice do not weigh in favor of appointment. There are no factual issues in this case, no conflicting evidence, and no need for cross-examination. There has been and will be no evidentiary hearing. And while the legal issue presented by Petitioner does appear to be of some substance, its complexity is not such that appointment of counsel is warranted. Moreover, Petitioner has demonstrated that he is more than capable of litigating the Petition on his own behalf, and the Court sees no indication that the appointment of counsel would be more likely to lead to a just determination. Petitioner's objection is thus overruled in this respect.

### 2. Construe to Raise Strongest Argument

Petitioner objects also that Judge Smith failed to construe his pro se Petition as raising the strongest arguments possible. (Obj. 6.) Specifically, Petitioner claims that Judge Smith failed to construe his Petition as raising an argument that the record "shows [Petitioner] never understood [postrelease supervision], . . . reveals an incomplete record, . . . [and] establishes a plea otherwise built on ignorance, a violation of *Boykin* [*v. Alabama*, 395 U.S. 238 (1969)]." (*Id.*)

The Court is puzzled at this argument, as the policy of construing pro se submissions "to raise the strongest arguments that they *suggest*" is "driven by the understanding that implicit in the right of self-representation is an obligation on the part of the [C]ourt to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman*, 470 F.3d at 474–75 (alteration, some italics, and internal quotation marks omitted). By pointing, in his Objections, to the arguments he claims Judge Smith should have addressed, Petitioner has obviated the need for liberal treatment of his submissions—he is competent enough to articulate those arguments himself.

In any event, however, Petitioner has misunderstood the R&R. Judge Smith did interpret Petitioner as raising a claim pursuant to *Boykin*, although she cited to the Supreme Court's more recent announcement of the *Boykin* rule in *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). (*See* R. & R. 9.) Judge Smith addressed the argument Petitioner makes now, namely that his guilty plea was not knowing and voluntary within the meaning of *Boykin* and its progeny because the trial court failed to apprise Petitioner of the consequences of violating his terms of postrelease supervision. Judge Smith thus did not err in her interpretation of Petitioner's arguments.[1]

---

[1] To the extent Petitioner means to suggest that Judge Smith should have construed the Petition as arguing that Petitioner was never advised of the nature of postrelease supervision, that argument has never been raised before now, and is thus unexhausted.

7

### 3. Merits of Claim

Finally, Petitioner reargues much of his claim that he was denied due process when the trial court refused to vacate his guilty plea, notwithstanding that the court did not advise Petitioner that he could be incarcerated for violating the terms of his postrelease supervision. (*See* Obj. 6–9.) Petitioner's objections are without merit.

While the Court will take as true Petitioner's contention that he offered his plea in ignorance of the consequences of violating the terms of his postrelease supervision, that does not necessitate a finding that his plea was taken in violation of *Boykin*. *Boykin* merely held that a plea of guilty must be "voluntarily made." 395 U.S. at 242. The Supreme Court has further explained that a defendant's guilty plea is knowing and voluntary, and thus consistent with due process, if the criminal defendant is made "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks omitted). Direct consequences are those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (internal quotation marks omitted). All other consequences that flow from a guilty plea are designated as "collateral." *Id.*

As Judge Smith recognized, there is no Supreme Court authority holding or even suggesting that the term of imprisonment that may result from a violation of postrelease supervision is a direct consequence of which a defendant must be apprised before entering a guilty plea. (*See* R. & R. 9–10.) In fact, there are a number of cases noting that there is no Supreme Court precedent holding that a defendant who pleads guilty must be made aware of even the fact that postrelease supervision may be imposed. *See, e.g., Fields v. Lee*, No. 12-CV-

8

4878, 2016 WL 889788, at *16 (S.D.N.Y. Jan. 28, 2016), *adopted by* 2016 WL 879319 (S.D.N.Y. Mar. 7, 2016); *Rosario v. Laffin*, No. 13-CV-181, 2014 WL 2600169, at *12 (E.D.N.Y. June 11, 2014); *Wilens v. Superintendent of Clinton Corr. Facility*, No. 11-CV-1938, 2014 WL 28995, at *8 (E.D.N.Y. Dec. 31, 2013); *Facen v. Cully*, 787 F. Supp. 2d 278, 284 (W.D.N.Y. 2011). In light of this precedent, it can hardly be said that there is any established authority holding that the failure to advise a defendant of the consequences of violating postrelease supervision—a consequence at least one step removed from the mere imposition of postrelease supervision—is a violation of due process, or that such a rule may be implied from existing precedent.

Petitioner argues that *Padilla v. Kentucky*, 559 U.S. 356 (2010), eliminated the distinction between "direct" and "collateral" consequences of a conviction, and thus it was error for the New York Court of Appeals to hold that the consequences of violating postrelease supervision were a collateral issue of which Petitioner was not required to be advised during the plea allocution. (*See* Obj. 4–5, 6–7.) But this argument has been squarely rejected by the Second Circuit. In *United States v. Youngs*, 687 F.3d 56 (2d Cir. 2012), when faced with the same argument on a direct appeal, the Second Circuit pointed out that "*Padilla*'s holding was limited to the requirement of counsel to advise of deportation pursuant to their Sixth Amendment responsibilities." *Id.* at 62. The court found this distinction material because the "Sixth Amendment responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the responsibilities of a court under the Fifth Amendment." *Id.* Moreover, the Second Circuit noted, the holding in *Padilla* rested on the fact that "deportation under [those] circumstances [was] nearly automatic," whereas the consequences at issue in *Youngs* (future civil commitment) are "not nearly as certain." *Id.* at 63.

9

Similarly, the imposition of a term of incarceration following a violation of the terms of postrelease supervision is, as the New York Court of Appeals recognized, an uncertain prospect. First, Petitioner would have to actually violate the terms of his postrelease supervision. Then, the agency responsible for his supervision would have to determine that Petitioner violated the terms of his postrelease supervision, and would then have to select an appropriate remedy, which may or may not be a return to prison. *See People v. Monk*, 989 N.E.2d 1, 32–33 (N.Y. 2013). There is nothing unreasonable or improper about this line of reasoning, and certainly nothing that conflicts, either directly or indirectly, with established principles of constitutional law. While Petitioner is correct that the absence of a Supreme Court case directly on point is not fatal to his Petition, *see Grayton v. Ercole*, 691 F.3d 165, 169–70 (2d Cir. 2012), it is not simply the absence of directly-controlling precedent that forecloses Petitioner's habeas claim. The weight of authority, in fact, is decidedly against Petitioner, and the Court therefore concludes that the New York Court of Appeals' decision did not involve an unreasonable application of constitutional law.

Petitioner may be correct that it would be more prudent to advise criminal defendants of the possibility of incarceration should they violate their terms of postrelease supervision, but that contention falls short of establishing that all defendants must be so apprised by constitutional mandate. The New York Court of Appeals did not unreasonably apply Supreme Court precedent when it held that Petitioner's guilty plea was knowing and voluntary, and thus the Court adopts the R&R recommending dismissal of the Petition.

## II. Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise. The Court therefore adopts Judge Smith's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent and close the case.

SO ORDERED.

DATED: July 11, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE